UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**JAMES Z.,**

**Plaintiff,**

v.                                                         Case No. 1:22-cv-00568-TPK

**COMMISSIONER OF SOCIAL**          OPINION AND ORDER
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on May 25, 2022, denied Plaintiff's applications for disability insurance benefits and supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 10), and the Commissioner has filed a similar motion (Doc. 11).  For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the entry of judgment in favor of the Commissioner.

## I.  BACKGROUND

On July 12, 2019, Plaintiff protectively filed his application for disability insurance benefits, alleging disability since October 15, 2015. That application was denied initially and on reconsideration.  On December 10, 2019, he filed an application for supplemental security income, which was also denied.  An Administrative Law Judge then held a hearing on January 20, 2021.  Both Plaintiff and a vocational expert, Robert Baker, testified at that hearing.

The ALJ issued an unfavorable decision on June 9, 2021.  She found, first, that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020, and that he had not engaged in substantial gainful activity since the alleged onset date.  Next, the ALJ found that Plaintiff had severe impairments including lumbar degenerative disc disease, diabetes mellitus, type 1, hypothyroidism or Grave's disease, and bilateral feet osteomyelitis.  She further found that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ determined that Plaintiff was able to perform sedentary work.  However, he had postural limitations in that he could only occasionally climb, stoop, crouch, kneel, and balance, and he could not crawl.  Also, he could not work around unprotected heights or moving machinery and might need to use a cane

while walking.  After finding that Plaintiff was unable to perform his past relevant work as an electronics repairer or pantry chef, the ALJ, relying on testimony from the vocational expert, determined that Plaintiff could perform sedentary jobs such as addresser, call-out operator, and document preparer.  She also found that these jobs existed in significant numbers in the national economy.  As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

In his motion for judgment on the pleadings, Plaintiff raises three issues, stated here *verbatim*:

> 1.  The ALJ improperly rejected Dr. Murphy's disabling treating physician opinion.
>
> 2.  The ALJ failed to reconcile the RFC with the more limiting portions of the opinions from Dr. Huckell and Mr. Joslyn, Dr. Orsini, Dr. Luzi, and Dr. Dave.

Plaintiff's memorandum, Doc. 10-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 39 years old at the time of the hearing, first testified that he was working as a pin stamper in 2012 when he hurt his back and successfully applied for workers' compensation benefits.  Before that, he had worked for an electronics repair company, a job he lost when the company downsized, and had also worked as a pantry chef for a restaurant in 2014.  He underwent back surgery in 2016 but since a settlement was reached on his workers' comp claim in 2018, he had not been able to afford more treatment.  He had not worked since 2015.

Next, Plaintiff said that he lived with his wife and daughter.  He could drive but not for very long.  Plaintiff testified that he used an insulin pump to treat his diabetes but that he had lost the feeling in his legs.  He also had developed diabetic retinopathy but was able to read with the use of reading glasses. When asked about his physical limitations, Plaintiff said that he could stand for 15 to 20 minutes, could sit for only five minutes before he had to stand up, and could walk 100 or 200 feet without resting.  Lastly, he suffered from Grave's disease, which caused dizziness but which was helped to some extent by medication.  He also said that he took only over-the-counter medication for pain, did exercises, and used a back brace.

As far as daily activities were concerned, Plaintiff said that he could do a little cooking and cleaning.  However, he did not do laundry.  His family had taken a trip recently to Orlando but his wife did all the driving.  On a typical day, Plaintiff made himself breakfast, read, and played video games.  He sat in a recliner and used a heating

pad for pain. He also used an inhaler for asthma and that controlled his symptoms. Finally, Plaintiff testified that he used a cane for balance although no doctor had prescribed it for him.

The vocational expert, Robert Baker, identified Plaintiff's past jobs as electronic equipment repairer and cook. He was then asked questions about a person with Plaintiff's vocational profile who could work at the light exertional level with certain postural and environmental restrictions, and said that such a person could not do Plaintiff's past work but could do jobs such as photocopy machine operator, marker, and router. However, if the person cold do only sedentary work, those jobs would be eliminated. The expert further testified that there were sedentary jobs available to such a person, including addresser, call-out operator, and document preparer for microfilm, and that the use of a cane would not affect the ability to do those jobs. Being off task more than ten percent of the time would preclude employment, however, as would incurring more than one unexcused absence per month. Finally, the expert testified that if the person had only frequent ability to exercise near visual acuity, the addresser job would not be available, but the person could work as a pneumatic tube operator. He also provided numbers for all of those jobs as they existed in the national economy.

### B. Medical Evidence

Plaintiff has adequately summarized the medical evidence in his memorandum and that summary is not contested by the Commissioner. Briefly stated, the evidence shows that Plaintiff was treated throughout the relevant time frame for issues with his low back and the consequences of his diabetes. For example, treatment records from 2012 show that there were some abnormalities observed in the spine at L4-5 and L5-S1. By 2015 he had also developed right leg pain and was discussing surgery with his doctor. He was working at a light-duty job at that point. In January, 2016, Drs. Huckell and Pell performed surgery on his back. He continued to see Dr. Huckell after the surgery, and studies showed that the surgery healed well and the fusion was solid. Subsequent notes from his endocrinologist, who was treating him for diabetes, showed full range of motion bilaterally in both the upper and lower extremities.

Plaintiff was also treated periodically for open wounds and ulcers on his feet resulting from his diabetic neuropathy. By 2019, he had developed osteomyelitis in his right foot. There are a number of notes from his primary care physician where he denied any back pain.

### C. Relevant Opinion Evidence

Post-surgery, Plaintiff was evaluated for workers' compensation purposes by Dr. Orsini on September 13, 2016. Plaintiff reported continuous serious low back pain and was doing physical therapy twice per week. He performed light household duties but said that standing and dressing were both difficult. At the examination, he walked with

an antalgic gait but that may have been due to recent foot surgery. His back was tender but he could stand on his toes and heels and do a partial knee bend. He demonstrated restricted range of motion in his lumbar spine but it was more severe than at a recent physical exam. Dr. Orsini thought that Plaintiff suffered from failed back syndrome and that he had a moderate degree of disability, being able to lift up to 25 pounds and to sit or stand for up to two hours at a time without changing positions. He also could rarely perform a number of postural activities and could occasionally reach overhead and below shoulder level. (Tr. 440-43).

Dr. Bauer, who had done work-related examinations on Plaintiff prior to his surgery, performed another such evaluation in 2016. Plaintiff did not report any improvement from his surgery. On examination, his gait was normal. No range of motion studies were performed due to Plaintiff's wearing a back brace. Dr. Bauer thought Plaintiff had a marked partial disability and could only occasionally sit, stand, walk, climb, reach, and lift 5 pounds, and he could not kneel, bend, stoop, squat, or operate machinery. (Tr. 426-28).

In 2017, Dr. Luzi performed an independent orthopedic exam. At that time, Plaintiff was using a back brace but was not taking any pain medication. He said that the surgery had not really helped his condition and he was experiencing numbness in his right leg. On examination, Plaintiff was walking with a limp and he had some limitation in the range of motion of his lumbar spine as well as decreased sensation in the right leg. His diagnoses included lumbosacral sprain and strain as well as degenerative disc disease of the lumbar spine. Dr. Luzi thought Plaintiff could return to work with restrictions including no repetitive bending or twisting, a lifting limit of 15 pounds, only infrequent squatting, crawling, and climbing, and no prolonged sitting, standing, or walking. (Tr. 416–20).

A report from Dr. Huckell dated in 2019 states that Plaintiff was still off work due to his back injury but able to walk normally. He had some limitations on the range of motion in his lower back and straight leg raising was positive on the right side. His surgical scar from the 2016 operation was well-healed but he had some numbness at L3-L5. Dr. Huckell concluded that Plaintiff should avoid repetitive forward bending, twisting, crawling, or climbing, and prolonged sitting, standing, and walking for more than two hours at a time without a break. (Tr. 721-23). He expressed similar opinions in 2017 (*e.g.* Tr. 384) and 2018 (*e.g.* Tr. 727).

Dr. Dave performed a consultative internal medicine examination on October 1 2019. Plaintiff told her that he was using an insulin pump to control his blood sugar and it seemed to be working well. He had been treated for wounds or ulcerations of his feet in both 2018 and 2019 and he was using a cane both indoors and outdoors. He also reported continuing numbness in his right leg. Plaintiff said that sitting and driving for more than 30 minutes aggravated his back pain as did prolonged standing. On examination, Plaintiff demonstrated an abnormal gait but was able to walk on his heels.

Dr. Dave noted some restriction in the range of motion of the lumbar spine but straight leg raising was negative bilaterally. She diagnosed multiple impairments including diabetes and low back pain post surgery and concluded that Plaintiff needed to avoid ladders and heights and had mild to moderate limitations in prolonged sitting, standing, and walking as well as repetitive bending and twisting and heavy lifting and carrying. (Tr. 1374-77).

Two state agency physicians reviewed Plaintiff's records concerning physical impairments. On November 14, 2019, Dr. Seok concluded that Plaintiff could lift ten pounds, sit for six hours in a work day with normal breaks, walk for six hours, and had a number of postural restrictions. (Tr. 112-14). Dr. Ehlert reported on April 22, 2020, that Plaintiff could lift up to 20 pounds, could sit and walk for six hours each in a work day, and had postural limitations similar to those found by Dr. Seok. (Tr. 125-127).

Dr. Murphy, Plaintiff's endocrinologist, completed a physical capacity questionnaire on January 22, 2021, noting that she had been treating Plaintiff for his diabetes and was seeing him quarterly. She stated that she was not seeing him for back pain but indicated that he suffered from depression as well as diabetes. Dr. Murphy thought that Plaintiff's symptoms would constantly interfere with his concentration and attention and that he could not perform even a low stress job because he could not sit or stand comfortably. She also believed he would need to take frequent unscheduled breaks, needed to use a cane, and would miss more than four days of work per month. (Tr. 1627-30).

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence

> standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV.  DISCUSSION

### A. Dr. Murphy's Opinion

In his first claim of error, Plaintiff argues that the ALJ's rejection of Dr. Murphy's opinion - which, had it been accepted, would have resulted in a finding of disability - was not supported by substantial evidence.  Noting that the two most important factors in evaluating an expert medical opinion are its consistency with the other evidence and how well it is supported by the record, Plaintiff contends that the ALJ did not adequately explain or even explicitly discuss these factors and that this constitutes reversible error.  In response, the Commissioner asserts that the ALJ properly assessed these factors and that the Court should therefore uphold the ALJ's determination that this opinion was not persuasive.

To resolve this issue, the Court will first set out the basis of the ALJ's conclusion that Dr. Murphy's opinion lacked persuasive value.  In her decision, the ALJ first undertook an extensive review of the evidence, including the various expert opinions summarized above.  She first noted that physical examinations produced mostly normal findings throughout the post-operative period and that these opinions supported an ability to lift up to 20 pounds and to stand or walk for up to two hours at a time.  (Tr. 25).  Turning to the various independent medical examinations, the ALJ summarized them in detail and then reviewed Plaintiff's daily activities, commenting that although Plaintiff described those activities as significantly limited, "the record contains contrary indications from the claimant that make his allegations less compelling."  (Tr. 27).  The ALJ then repeated her observations about the types of restrictions indicated by the various consultative examiners and also noted that Plaintiff had not sought treatment of any kind for his back condition since May of 2019.  Lastly, she reviewed the endocrinology treatment records in some detail and observed that physical findings at those examination were largely normal, with indications that Plaintiff customarily denied significant physical impairments and was advised to continue an exercise program.  It was only after performing this extensive review of the record that the ALJ turned to an evaluation of Dr. Murphy's opinion.

After summarizing Dr. Murphy's conclusions, the ALJ determined that her opinion was not persuasive.  The ALJ reasoned that

> The overall evidence of record does not support these limitations, including her own contemporaneous treatment notes.  As noted above, the overall evidence of record documents relatively conservative treatment with his endocrinologist, with

> the objective examinations generally revealing normal gait, no use of assistive devices, and grossly intact motor strength. In fact, the only abnormalities in the examinations were the findings of absent monofilament and vibration sensation in his toes, which was intact at the bilateral arches, heels and ankles.

(Tr. 31-32). She went on to find Dr. Huckell's opinions somewhat persuasive but actually believed that further restrictions, primarily the limitation to sedentary work, were appropriate. She accorded the same degree of persuasiveness to all of the other opinions, noting that she was also taking Plaintiff's subjective complaints and his overall treatment history into account in finding that he was somewhat more limited than any of the experts believed.

This Court has explained how the regulations for evaluating expert medical opinions function after they were revised in March of 2017:

> First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).
>
> Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). Id. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.
>
> Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, the regulations also alter the way the ALJ discusses medical opinions in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

*Michael H. v. Comm'r of Soc. Sec*., 2022 WL 768658, at *5 (W.D.N.Y. Mar. 14, 2022).

It is, of course, helpful for an ALJ to discuss these factors specifically with respect to each medical opinion in the record. However, there is no magic formula for an ALJ's consideration of these factors. Thus, in *Sarah M.K. v. Comm'r of Social Security,* 2022 WL 4232880 (W.D.N.Y. Sept. 14, 2022), this Court stated, at *5, that

> [u]nder the new regulations, an ALJ's failure to adequately explain how he or she considered the supportability and consistency of a medical opinion in the record is procedural error. *Loucks [v. Kijakazi]*, 2022 WL 2189293 [(2d Cir. June 17, 2022)] at *2. However, even if the ALJ commits such an error, the reviewing court may affirm if "a searching review of the record assures us 'that the substance of the [regulation] was not traversed.' " *Loucks,* 2022 WL 2189293 at *2 (*quoting Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

The Court finds neither a procedural nor a substantive error here. Reading the ALJ's decision as a whole, it is clear that she adequately discussed how the totality of the medical evidence, including both treatment notes and expert opinions, undercut the persuasiveness of Dr. Murphy's opinions. The conflict with other opinions was clearly noted by the ALJ, as was the failure of the endocrinology treatment notes to support such extreme restrictions. Since the ALJ followed the proper procedures here and gave more weight to the evidence which conflicted with or failed to support Dr. Murphy's opinion - something she was entitled to do - the Court finds no merit to Plaintiff's first claim of error.

## B. Other Medical Opinions

As his second claim, Plaintiff argues that the ALJ committed error by failing to recognize and reconcile a conflict between her residual functional capacity finding and the medical opinions expressed by numerous sources including Drs. Huckell, Orsini, Luzi, and Dave. Each of these physicians concluded that Plaintiff had some limitation on his ability to sit for prolonged periods, essentially stating that he could do so for only two hours at a time before needing a break. The Commissioner responds, quoting Social Security Ruling 96-9p, that there is no error here because sedentary work permits a person to take a break from sitting every two hours.

The precise issue raised by Plaintiff has been addressed by this Court in many prior opinions. For example, in *Kevin M. v. Kijakazi*, 2022 WL 2704527, at *2 (W.D.N.Y. July 12, 2022), the Court said this:

> As district courts within this Circuit have repeatedly recognized, moderate limitations in prolonged sitting are not necessarily inconsistent with the ability to perform the up-to-six hours of sitting (at approximately 2-hour intervals, interrupted by morning and afternoon breaks, and a lunch period) required for sedentary work. *See Marty S. v. Commissioner*, 2022 WL 472566 , 2022 U.S. Dist. LEXIS 28278 at *17 (W.D.N.Y. 2022)(collecting cases, and finding that moderate limitations in sitting "are not necessarily inconsistent with the ability to

perform ... sedentary work"); *Lisa P. v. Commissioner*, 2021 U.S. Dist. LEXIS 41010 at *7-*9 (W.D.N.Y. 2021)("a moderate limitation in the ability to sit does not necessarily preclude a finding that the claimant can meet the sitting demands of sedentary work"); *Ali S. M. v. Commissioner*, 2022 WL 23223, 2022 U.S. Dist. LEXIS 421 at *9 (W.D.N.Y. 2022)("a moderate limitation in the ability to sit does not necessarily preclude a finding that [p]laintiff can meet the sitting demands of sedentary work"); *Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 229 (E.D.N.Y. 2021)(collecting cases, and holding that a medical opinion describing moderate limitations for prolonged walking, sitting, and standing supports an RFC for a range of work at the sedentary level). *See generally Halloran v. Barnhart,* 362 F.3d 28, 33 (2d Cir. 2004)(emphasizing that a sedentary worker is not required to sit continuously for six hours in a day without standing or changing position: "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight").

The Court is in agreement with these decisions, and therefore concludes that the issue as raised and articulated in Plaintiff's memorandum lacks merit. Consequently, the ALJ's decision denying benefits will be affirmed.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 10), **GRANTS** the Commissioner's motion (Doc. 11), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

                                         **/s/ Terence P. Kemp**
                                         **United States Magistrate Judge**